United States District Court
Southern District of Texas
**ENTERED**
December 07, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DANIEL AIELLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00018 |
| | § | |
| DALE WAINEWRIGHT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART DEFENDANTS' MOTION TO DISMISS AND TO DENY
PLAINTIFF'S SUMMARY JUDGMENT MOTION WITHOUT PREJUDICE**

Plaintiff Daniel Aiello, an inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are: (1) a Motion to Dismiss filed by Patrick O'Daniel, Bryan Collier, Miguel Martinez, and the Texas Department of Criminal Justice (TDCJ) (D.E. 13); and (2) Plaintiff's Motion for Summary Judgment (D.E. 27). For the reasons set forth below, the undersigned respectfully recommends that Defendants' Motion to Dismiss be **GRANTED in part** and **DENIED in part** and that Plaintiff's summary judgment motion be **DENIED without prejudice**.

I.      **JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently residing at the Hightower Unit in Dayton, Texas.  At the time he filed this lawsuit, Plaintiff was housed at the McConnell Unit in Beeville, Texas.

Plaintiff named the following defendants in his Original Complaint: (1) TDCJ; (2) TDCJ Executive Director Bryan Collier (Collier); (3) TDCJ-CID Director Miguel Martinez (Martinez); and (4) Dale Wainwright, Chairman of the TDCJ.  (D.E. 1).  Plaintiff sues the individual defendants in their official capacities only.  (*Id.* at 8).

Plaintiff asserts violations of the First and Fourteenth Amendment under 42 U.S.C. § 1983, as well as violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. Sections 200cc-200cc-5. (D.E. 1). Plaintiff claims that TDCJ's policies requiring him to work at his assigned prison job without compensation restricts his right to exercise his religious obligation as a Christian to tithe one-tenth of his labor. (*Id.* at 8-14). Plaintiff further claims that TDCJ's policies of allowing only certain inmates to be paid for their prison jobs violate his equal protection rights.  (*Id.* at 8).  In addition to declaratory relief, Plaintiff seeks injunctive relief in the form of "awarding Plaintiff compensation or a value for labor performed, thereby endorsing Plaintiff['s] rights to exer[c]i[s]e the religious belief of tithing."  (*Id.* at 16-17).

On February 1, 2022, the undersigned ordered service of Plaintiff's complaint on Wainwright, Collier, Martinez, and TDCJ.  (D.E. 8).  In a Notice of Substitution of Party, Patrick O'Daniel (O'Daniel) informed the Court that Wainwright no longer serves as TDCJ Chairman and that O'Daniel should automatically be substituted as a party to this lawsuit. (D.E. 12).  Plaintiff, in turn, moved the Court to amend by substituting O'Daniel for Wainwright.  (D.E. 17).  The undersigned granted Plaintiff's motion to amend, and O'Daniel was substituted for Wainwright as a party to this lawsuit.  (D.E. 18).

On September 30, 2021, O'Daniel, Collier, Martinez, and TDCJ filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (D.E. 13). Plaintiff subsequently filed a response.  (D.E. 16).  On August 11, 2022, the undersigned granted Plaintiff's motion to voluntarily dismiss Martinez from this case without prejudice. (D.E. 33).

On June 21, 2022, Plaintiff filed a Motion for Summary Judgment.  (D.E. 27).  The undersigned granted Defendants' motion to stay their deadline to respond to the summary judgment motion pending the resolution of the Motion to Dismiss.  (D.E. 29).  Upon reexamining this matter, however, the undersigned concludes that Plaintiff has submitted his summary judgment motion prematurely.

"Federal courts are permitted to dismiss a summary judgment motion without prejudice if it is filed before any party answers."  *Watkins v. Monroe*, No. 6:18cv347, 2019 WL 1869864, at *1 (E.D. Tex. Mar. 27, 2019), *adopting report and recommendation* 2019 WL 1858100 (E.D. Tex. Apr. 25, 2019).  Here, Defendants have not filed an answer in this

case.  Additionally, no discovery has taken place, and no scheduling order regarding the deadline for discovery or the filing of dispositive motions has been issued.  *See Alabama Farm Bureau Mut. Cas. Co., Inc. v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 608 (5th Cir. 1979) (recognizing that summary judgment motions should not "ordinarily be granted before discovery has been completed").  Plaintiff further has not attached any evidence to his summary judgment motion in order to establish the absence of any genuine issues of fact with respect to his claims.

Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (D.E. 27) be **DENIED without prejudice** to renew at a later time after a scheduling order has been issued and after Plaintiff has been able to conduct sufficient discovery and can provide evidentiary support for his motion.

## III.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following relevant facts in his Original Complaint. (D.E. 1). Plaintiff has practiced a non-denomination Christian faith for thirty years.  (*Id.* at 9).  The act of tithing is part of his religious beliefs.  (*Id.*).  Plaintiff alleges that "his religious belief requires him to tithe one-tenth of his labor," which is typically accomplished by tithing one-tenth of his income.  (*Id.* at 10).

Per TDCJ policy, Plaintiff is assigned to a mandatory job for which he receives no compensation.  (*Id.* at 8).  Plaintiff is therefore forced to choose an activity that does not provide income for tithing or else face disciplinary consequences.  (*Id.* at 9).  According to Plaintiff, Defendants have restricted his ability to exercise his religious belief in the form

of tithing "by requiring Plaintiff to work while depriving him of compensation for his labor." (*Id.* at 10). Thus, Plaintiff alleges that TDCJ's prison policies have imposed a substantial burden on his ability to practice his faith. (*Id.* at 12).

In contrast to the majority of offenders who were not paid for their physical labor, offenders working in the Prison Industries Enforcement Certification Program (PIECP) receive compensation for their labor. (*Id.* at 14). According to Plaintiff, offenders in forty-seven state prisons and in federal prisons are paid for their labor. (*Id.*).

## IV.   LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Defendants O'Daniel, Collier, and TDCJ (collectively "Defendants") move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). (D.E. 16). Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist.  *Id.*

Rule12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 554-55.

## V.  DISCUSSION

### A.  Eleventh Amendment Immunity

#### (1)  Applicable Legal Principles

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  "The state need not be the named party in a federal lawsuit, for a

state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Id.*   The Eleventh Amendment bar, when it applies, implicates the Court's subject-matter jurisdiction. *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996).

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)  The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Additionally, because RLUIPA does not waive the state's Eleventh Amendment immunity, monetary damages are not available for claims brought against state officials under RLUIPA. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 335 (5th Cir. 2009), *aff'd sub. nom., Sossamon v. Texas*, 563 U.S. 277 (2011).

*Ex parte Young* provides "an equitable exception to Eleventh Amendment sovereign immunity ... [that] allows plaintiff to sue a state official, in his official capacity, in seeking to enjoin enforcement of a state law [or policy] that conflicts with federal law." *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (citing *Ex parte Young*, 209 U.S. 123, 155–56, 159–160 (1908)).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*

*Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted).

The *Ex parte Young* exception is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Williams on behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986)). "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Generally, "[a]s long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief." *Williams*, 954 F.3d at 738. In addressing whether suits against state officials are permissible under *Ex parte Young*, the Fifth Circuit recently explained:

> The general dividing line is between impermissible suits seeking remedies for past violations of federal law and permissible suits seeking prospective relief to prevent ongoing violations. A request for injunctive relief does not automatically put a suit on the *Ex parte Young* side of the line. The key is not the type of relief sought but whether the remedy is preventing ongoing violations of federal law as opposed to past ones. A state employee fired because of her disability could not obtain an award of "equitable restitution" requiring the state official to pay her for lost wages. But such an employee could sue the state seeking reinstatement.

*Harrison v. Young*, 48 F.4th 331, 337-38 (5th Cir. 2022) (citations omitted).

"[C]ourts have upheld equitable relief where there is but an 'ancillary effect' on the state treasury that is 'incidental to the declaratory or injunctive relief that is permitted under

*Ex parte Young*.'"  *Stollings v. Texas Tech Univ.*, No. 5:20-CV-250-H, 2022 WL 824842,

\*5 (N.D. Tex. Mar. 18, 2022) (quoting *Fontenot v. McCraw*, 777 F.3d 741, 753 (5th Cir.

2015)).   Such ancillary relief "cannot stand alone" and instead "must accompany and

further some other – and otherwise appropriate – relief."  *Fontenot*, 777 F.3d at 753.  "To

qualify as ancillary relief, the payment of state funds must be 'a necessary consequence of

compliance in the future with a substantive federal-question determination.'"  *Stollings*,

2022 WL 824842, at \*5 (citing *Fontenot*, 777 F.3d at 753).

The Fifth Circuit has held that a state employee's "request for reinstatement is

sufficient to bring a case within the *Ex parte Young* exception to Eleventh-Amendment

immunity, as it is a claim for prospective relief designed to end a continuing violation of

federal law."  *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 324 (5th Cir. 2008) (FMLA

case).  *See also Jones v. Tex. Juv. Just. Dep't*, 646 F. App'x 374, 376 (5th Cir. 2016) (1983

and Title VII case).  However, the exception under *Ex parte Young* "cannot be used to

obtain an injunction requiring the payment of funds from the State's treasury … or an order

for specific performance of a State's contract."  *Virginia Office for Protection and

Advocacy v. Stewart*, 563 U.S. 247, 256-57 (2011).

To fall within the *Ex parte Young* exception, "claims requesting declaratory relief

must 'demonstrate the ongoing nature of the alleged unconstitutional conduct.'"  *Stollings*,

2022 WL 824842, at \*6 (quoting *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 395 (5th

Cir. 2015)).  "While it is true that [a] declaratory judgment could have some future effect

by clarifying the contours of [a constitutional right] and deterring similar actions by the

state, 'compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'"  *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  Thus, an ongoing violation must be alleged with respect to a request for declaratory relief.  *NiGen*, 804 F.3d at 394-95.  *See also Verizon Md.*, 535 U.S. at 645 ("In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (quoting and citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298-99 (1997)); *Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020) (finding that *Ex parte Young* exception was not met where plaintiff sought declaratory relief against state officials because plaintiff focused on past behavior and did not allege that officials were "currently engaged in any of those behaviors or that any such actions [were] imminent").

### (2)    *Analysis*

Defendants contend in their Motion to Dismiss that Plaintiff's requested injunctive relief – compensation or a value for labor performed – "does not fall within the *Ex parte Young* exception to Eleventh Amendment immunity because, at bottom, he is seeking money from the state treasury."  (D.E. 13, p. 5).  Defendants frame their argument as follows:

> [Plaintiff] is not asking the Court to compel any action by Defendants. Rather, he is asking them to pay him monetary compensation for past and future work performed at his prison job, similar to a plaintiff in an

> employment action who, rather than seeking reinstatement, seeks lost wages.
> And courts have held that such analogous claims are barred by Eleventh
> Amendment immunity where those wages would come from the state coffers.

(*Id.*).

In addition to seeking declaratory relief for violations of his RLUIPA and constitutional rights, Plaintiff states that he seeks injunctive relief in the form of "awarding Plaintiff compensation or a value for labor performed, thereby endorsing Plaintiff['s] rights to exer[c]i[s]e the religious belief of tithing." (*Id.* at 16-17). Any such compensation for labor performed would undoubtedly be paid from the state treasury. When liberally construing Plaintiff's *pro se* complaint, it is apparent that Plaintiff also seeks to modify and change TDCJ policies which control his use of time and require him to work while incarcerated without any compensation for his labor. (D.E. 1, pp. 9, 11).

In *Stollings*, the district court acknowledged that "there are gray areas in the prospective/retrospective and equitable/monetary distinction. *Stollings*, 2022 WL 824842, at *5. Neither the *Stollings* court nor Defendants have cited case law where inmates seek relief having an effect, ancillary or otherwise, on the state treasury for ongoing violations of RLUIPA or the United States Constitution.

Contrary to Defendants' contentions, the undersigned cannot conclude that Plaintiff seeks relief confined only to addressing past violations. Plaintiff's request for injunctive relief initially targets policy change which would facilitate his ability in the future to exercise his religious belief as a Christian and tithe a percentage of his compensation for

his labor.   Indeed, at this early stage in the litigation, Plaintiff's request seeking compensation for labor performed through payments from state funds appears to be a necessary consequence of complying with any modification to TDCJ policy addressing ongoing violations of his federal rights.  *See Harrison*, 48 F.4th at 337-38; *Stollings*, 2022 WL 824842, at *5.

As discussed in detail below, Plaintiff has stated plausible RLUIPA and First Amendment claims. Plaintiff's allegations reflect that any possible violations of his federal rights remain ongoing as he continues to work without compensation, thereby restricting the exercise of his religious belief associated with tithing.  Accepting Plaintiff's allegations as true, the undersigned concludes that the declaratory and injunctive relief sought by Plaintiff seeks prospective relief to address the alleged ongoing harm.  Because the *Ex parte Young* exception may apply in this case, Defendants' Motion to Dismiss (D.E. 13) should be denied as to whether Plaintiff's claims seeking prospective injunctive and declaratory relief are barred by the Eleventh Amendment.

### B.    PLRA

Defendants further contend that Plaintiff's request for injunctive relief falls outside the PLRA.  (D.E. 13, p. 6).  According to Defendants, Plaintiff has failed to "demonstrate that forcing TDCJ to pay [Plaintiff] for his prison job is the least intrusive means necessary to correct" the violation of any ongoing federal rights.  (*Id.* at 6-7).

The undersigned recognizes that the PLRA limits a court's ability to fashion injunctive relief.  Before a district court can award such relief, it must find that "such relief

is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation." 18 U.S.C. § 3626(a)(1)(A). Under the PLRA, a plaintiff is not entitled to the most effective available remedy but rather a remedy that eliminates the constitutional injury. *See Westefer v. Neal*, 682 F.3d 679, 683-84 (7th Cir. 2012) (vacating an injunction under the PLRA because it exceeded what was required under the Due Process Clause).

At this stage in the case, the undersigned cannot conclude that the relief sought by Plaintiff is not so narrowly drawn as to be the least intrusive means necessary to correct any violation of his federal rights. Following discovery and further development of the issues in this case, the Court will be in better position to consider whether the injunctive relief sought by Plaintiff violates the PLRA. Accordingly, Defendants' Motion to Dismiss (D.E. 13) should be denied to the extent he seeks dismissal of Plaintiff's claims for injunctive relief as outside the scope of the PLRA.

### C.     RLUIPA Claim

#### *(1)     General Legal Principles*

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden both "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The statute also provides for a cause of action for a RLUIPA violation. 42 U.S.C. § 2000cc–2(a).

13 / 24

A plaintiff has the initial burden under RLUIPA of showing the sincerity of his religious beliefs.  *See Moussazadeh v. Tex. Dept. of Crim. Justice,* 703 F.3d 781, 790-92 (5th Cir. 2012).   A plaintiff then bears the burden of showing that "the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *Mayfield v. Tex. Dept. of Crim. Justice*, 529 F.3d 599, 613 (5th Cir. 2008).  Plaintiff must show that a government practice imposes a "substantial burden" on his religious exercise, which requires the Court to determine: (1) whether the burdened activity is "religious exercise," and if so, (2) is the burden "substantial"?  *Adkins v. Kaspar,* 393 F.3d 559, 567 (5th Cir. 2004).  RLUIPA defines "religious exercise" to include "any exercise of religion," whether or not compelled by, or central to, a system of religious beliefs." *Id.*; 42 U.S.C. § 2000cc–5(7)(A).

A government action, practice, or regulation creates a substantial burden on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs.  *Adkins*, 393 F.3d at 570.  Whether or not the challenged government action, practice, or regulation imposes a substantial burden on the complainant's exercise of the religious belief in question requires a case by case, fact-specific inquiry.  *Mayfield*, 529 F.3d at 613; *Adkins*, 393 F.3d at 570.  Once the plaintiff meets his initial burden, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Mayfield*, 529 F.3d at 613.

Congress enacted RLUIPA to provide broad protection for religious liberty. *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).  Thus, RLUIPA protections are expansive and are to be construed broadly to favor the maximum religious liberty appropriate in an institutional setting.  *Id.* at 357.

### *(2)    Analysis*

In their Motion to Dismiss, Defendants do not contest the sincerity of Plaintiff's Christian beliefs.  Rather, Defendants contend that Plaintiff cannot state a RLUIPA claim because the receipt of money is not a religious exercise.  (D.E. 13, pp. 9-10).  Defendants further contend that, "even if Plaintiff could limit his religious exercise to tithing itself," he has failed to "allege any substantial burden on that religious exercise because: (a) his beliefs do not limit tithing to contemporaneous monetary contributions; (b) he does not identify any specific TDCJ policy or practice that prohibits tithing; and (c) any restriction of his ability to tithe merely prevents him from enjoying a benefit not otherwise generally available."  (*Id.* 9-12).

Plaintiff first responds that tithing is recognized "as a religious exercise" and that Defendants "blatantly dictate how [he] can or should practice and exercise his religious beliefs" associated with tithing," which compels him "to act in a blasphemous way and violate a command by the Higher Power."  (D.E. 16, pp. 2-3).  Plaintiff further responds that: (1) he receives no benefit from receiving good times credits as they do not contribute to early release; (2) he is being subjected to a substantial burden right now in that he cannot exercise his religious belief to tithe; and (3) Defendants' policies allow them to control all

of Plaintiff's time, labor, and compensation, which operates to prohibit him from tithing. (*Id.* at 4).

Many of Defendants' arguments were considered and rejected by United States District Judge Nelva Gonzales Ramos in *Johnson v. Wainwright*, No. 2:19-CV-341, 2021 WL 2472929 (S.D. Tex. June 17, 2021).  In that case, inmate Rodney Johnson similarly claimed that TDCJ's policies, which required him to work without compensation, had restricted his right to exercise his religious belief to tithe a portion of his labor.  *Id.*

On the issue of qualifying the receipt of money as a religious exercise, District Judge Ramos recognized the act of tithing as a religious exercise rather than treating the receipt of money as a religious exercise.  *See id.* at *2 (citing *In re McLeroy*, 250 B.R. 872, 883 (N.D. Tex. 2000) and *Waguespack v. Rodriguez*, 220 B.R. 31, 34 (W.D. La. 1998)).  Because Johnson's use of time and labor as well as his ability to earn income were governed by TDCJ rules and regulations, District Judge Ramos concluded that the defendants had control of Johnson's "religious exercise by requiring him to work while depriving him of compensation for his labor."  *Id.*

District Judge Ramos further rejected various arguments challenging whether Plaintiff had alleged a substantial burden to Plaintiff's exercise of his religious belief.  Of relevance to this case, District Judge Ramos relied on *Garrett v. Stephens*, 675 F. App'x 444 (5th Cir. 2017) to conclude that a prisoner is not required to identify a specific TDCJ policy that directly prohibited tithing.  She instead determined:

> *Garrett* did not require a ***direct*** policy burdening a religious exercise to
> support a RLUIPA claim—such as a prohibition on tithing. Instead, the Fifth
> Circuit held in *Garrett* that because a temporary burden occurred as the result
> of a one-time investigation of an alleged state law violation, the claim was
> not actionable. No permanent policy of any kind was implicated in *Garrett*,
> unlike here, where permanent policies allow Defendants to control all of
> Plaintiff's time, labor, and compensation. So while they may not target
> tithing as a direct policy matter, Plaintiff has sufficiently pled that they
> prohibit it by practice or, indirectly, by a burdensome policy or set of policies.

*Johnson*, 2021 WL 2472929, at *3 (emphasis added).

Next, District Judge Ramos rejected the argument that an inmate cannot show a

substantial burden where the governmental action or regulation only prevents him from

enjoying a benefit that is not otherwise generally available. *Id.* The Fifth Circuit in *Adkins*

explained that:

> A governmental action or regulation creates a "substantial burden" on a
> religious exercise if it truly pressures the adherent to significantly modify his
> religious behavior and significantly violate his religious beliefs. And, in line
> with the foregoing teachings of the Supreme Court, the effect of a
> government action or regulation is significant when it either (1) influences
> the adherent to act in a way that violates his religious beliefs, ***or*** (2) forces
> the adherent to choose between, on the one hand, enjoying some generally
> available, non-trivial benefit, and, on the other hand, following his religious
> beliefs.

*Adkins*, 393 F.3d at 570 (emphasis added).

District Judge Ramos determined that, in the context of the structure set forth in

*Adkins*, inmate Johnson's "burden [fell] under the first of the two options – where the prison

policies influence[d] him to violate his religious beliefs." *Johnson*, 2021 WL 2472929, at

17 / 24

*3.  Like Johnson, Plaintiff also is influenced into a religious violation as he has been afforded no choice under the applicable policies which restrict him from **exercising his religious belief to tithe a portion of his labor.**

While not argued in *Johnson*, Defendants contend that Plaintiff cannot allege a substantial burden because his religious beliefs do not limit tithing to monetary contributions contemporaneous with his labor.  (D.E. 13, p. 11).  They argue that Plaintiff could meet his tithing requirement as follows: (1) even though he is not paid in money for his labor, Plaintiff could spend one-tenth of the time he spends working in the pursuit of religious labor; and (2) because he is compensated for his labor in the form of good-time credits which lead to early release, Plaintiff could tithe ten percent of that benefit retroactively once he obtains paid employment in the free world.  (*Id.*).

Defendants, however, have provided no authority to suggest that Plaintiff's tithing requirement under his Christian faith can be accomplished in the ways specified by them or that such tithing requirement for Christians otherwise is not limited to contemporaneous monetary contributions.  Plaintiff's allegations instead indicate that his religious beliefs specifically require him to tithe one-tenth of his labor, which is typically accomplished by giving one-tenth of earned income.  (D.E. 1, p. 10).

As noted above, courts must undertake a case by case, fact-specific inquiry into whether a governmental policy or practice places a substantial burden on an inmate's exercise of his religious belief.  *Mayfield*, 529 F.3d at 613.  With this principle in mind and based on the determinations set forth in *Johnson*, the undersigned finds Plaintiff's

allegations, accepted as true, adequately state that TDCJ's policies and practices substantially burden the exercise of his religious faith to tithe an appropriate amount for his labor. Because Plaintiff has alleged sufficient facts to state a plausible RLUIPA claim, Defendants' Motion to Dismiss (D.E. 13) should be denied on this issue.

### D.   First Amendment

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While a prisoner retains his First Amendment rights, including the right to free exercise of religion, he only retain those rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id*.; *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In evaluating the reasonableness of a prison regulation, four factors are considered: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact

accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally," (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89–91 (internal citations and quotation marks omitted). While *Turner*'s standard encompasses four factors, the Fifth Circuit has noted that "rationality is the controlling factor, and a court need not weigh each factor equally." *Mayfield*, 529 F.3d at 607 (citation omitted).

Defendants assert in their Motion to Dismiss that Plaintiff cannot state a First Amendment claim "solely on the basis of his being deprived of monetary compensation for his prison work assignment." (D.E. 13, p. 13). Defendants contend that TDCJ has a legitimate penological interest in controlling prison costs and that the policy of not paying inmates for assigned prison jobs is not targeted at a religion specifically. (*Id.* at 13-14). Plaintiff responds that the First Amendment protects inmates' rights to exercise religious belief, noting further that tithing has been recognized as a religious exercise. (D.E. 16, p. 5).

Defendants have cited no authority addressing the precise First Amendment issue presented in this case. Plaintiff's allegations, accepted as true, reflect that TDCJ policies have denied him the opportunity to exercise his religious belief associated with tithing. (D.E. 1, pp. 8-9). These allegations are sufficient at this early stage in the litigation to warrant further factual and legal development of his First Amendment claim, including whether Defendants' policies have impinged Plaintiff's First Amendment rights and

whether such policies are related to legitimate penological interests. *See Marr v. Collin County Detention Center*, No. 4:20-cv-273, 2021 WL 4168432, at *7 (E.D. Tex. Jul. 23, 2021), *adopted report and recommendation* 2021 WL 4148954 (E.D. Tex. Sep. 11, 2021) (recognizing that cases where inmates raise First Amendment and RLUIPA challenges to religious practices requires courts to "conduct a fact-intensive inquiry"). Accordingly, Defendants' Motion to Dismiss (D.E. 13) should be denied as to Plaintiff's First Amendment claim regarding whether he was denied the opportunity to tithe in accordance with his religious beliefs.

### E.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). To establish an Equal Protection Clause violation, a plaintiff must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted). *See also Oliver v. Kanan*, No. 4:09-CV-767, 2010 WL 2927333, at *3 (N.D. Tex. Jul. 28, 2010) (explaining that a plaintiff "must demonstrate that he was intentionally treated differently from similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent") (citation and internal quotation omitted). Discriminatory purpose

in an equal protection context implies the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group.  *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997).

Defendants contend in their Motion to Dismiss that Plaintiff's allegations relating to unequal pay among inmates fail to state an equal protection claim in that he does not allege the requisite purposeful discrimination.  (D.E. 13, p. 14).  Plaintiff alleges that, contrary to his situation, offenders in forty-seven states and in federal prisons are paid for their labor.  (D.E. 1, p. 14).  Plaintiff also alleges that TDCJ offenders working in the PIECP receive compensation for their labor.  (*Id.*).  Plaintiff contends, therefore, that he is receiving unfavorable treatment in comparison to similarly-situated inmates who are being paid.  (D.E. 1, p. 14; D.E. 16, p. 6).

Here, Plaintiff has not alleged any specific facts to demonstrate that any named defendant acted with a discriminatory purpose by enacting or implementing policies to exclude the majority of inmates from being compensated for their labor.  *See Walton v. Texas Dep't of Crim. Justice*, 146 F. App'x 717, 718 (5th Cir. 2005) ("The mere allegation that some prisoners are paid for work, while others are not, does not establish unlawful discrimination."); *Johnson*, 110 F.3d at 306 (explaining that "disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, *any* law [or government action] could be challenged on Equal Protection grounds by whomever it has negatively impacted"); *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990) (holding vague and

conclusory allegations that equal protection rights have been violated are insufficient to raise an equal protection claims).

Plaintiff's allegations, accepted as true, fail to state an equal protection claim. Accordingly, Defendants' Motion to Dismiss (D.E. 13) should be granted as to Plaintiff's equal protection claim against them.

## VI.    RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 13) be **GRANTED in part** and **DENIED in part**. Defendants' Motion to Dismiss (D.E. 13) should be **GRANTED** to the extent that Plaintiff's equal protection claim should be **DISMISSED with prejudice** against Defendants in their official capacities.  The undersigned respectfully recommends further that Defendants' Motion to Dismiss (D.E. 13) be **DENIED** to the extent they seek dismissal of Plaintiff's: (1) claims seeking prospective injunctive relief as either barred by the Eleventh Amendment or outside the scope of the PLRA; (2) RLUIPA claim against Defendants in their official capacities; and (3) First Amendment claim against Defendants in their official capacities.

Lastly, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (D.E. 27) be **DENIED without prejudice** to renew at a later time after a scheduling order has been issued and after Plaintiff has been able to conduct sufficient discovery and can provide evidentiary support for his motion.

Respectfully submitted on December 7, 2022.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).